```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: _8-19-09_            │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IDEA NUOVA, INC.

                          Plaintiff-Respondent,          08 Civ. 8595 (PKC)

            -against-

                                                         MEMORANDUM
                                                             AND
                                                           ORDER

GM LICENSING GROUP, INC.

                          Defendant-Petitioner.
------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.:

            Plaintiff-Respondent Idea Nuova, Inc. ("Idea Nuova") brings this action to

vacate or modify a Final Arbitration Award (the "Award") issued in favor of Defendant-

Petitioner GM Licensing Group, Inc. ("GM").  The question before the arbitrator was

whether Idea Nuova had orally renewed its consulting agreement with GM and, if so,

whether GM was entitled to monetary and injunctive relief as a result of that renewal.

The arbitrator found that Idea Nuova had both renewed and breached its agreement with

GM, and the Award granted compensatory damages, attorney's fees and injunctive relief

to GM under the renewed agreement.  Idea Nuova contends that the Award is unlawful

and should be vacated pursuant to section 10 of the Federal Arbitration Act ("FAA"), 9

U.S.C. § 1 et seq. (2006), or modified pursuant to section 11 of the FAA.  (Second

Amended Complaint ("Compl."), at ¶ 45.)  Idea Nuova also seeks a declaratory judgment

that, contrary to the arbitrator's finding, it did not renew its agreement with GM in May

2006.  (Id. ¶ 61.)

Two motions are presently before the Court:  GM petitions for confirmation of the Award under section 9 of the FAA and an award, pursuant to the parties' agreement, of its costs, attorney's fees and other expenses in this action.  Idea Nuova moves, in the alternative, for summary judgment on the claims in its Second Amended Complaint or for vacatur or modification of the Award.  For the reasons explained below, GM's petition is granted and Idea Nuova's motions are denied.[1]

I.      Background

Idea Nuova is a New York-based company that markets novelty products for the home and specializes in novelty bedding. (Compl. ¶ 12.) On December 16, 2002, Idea Nuova entered into a written consulting agreement (the "Agreement") with GM, under which GM would provide Idea Nuova with consulting services to "help . . . acquire the licensing rights to comic and cartoon characters, live action, feature films, brands, logos, and other properties." (Agreement at 1, attached at Pet. Ex. A & Compl. Ex. A.) The term of the Agreement was one year, from January 1, 2002 through December 31, 2003, but could be "extended by a written agreement signed by both parties." Id. at 2. The parties subsequently renewed the Agreement through 2004 and 2005. (Compl. Ex. B & C.)

The Agreement included the following arbitration clause at section 8, under the heading "Attorneys' fees:"

> In the event of a dispute arising hereunder, the parties must attempt to resolve same for a period of forty-five (45) days after which time the dispute shall be submitted to [American Arbitration Association] arbitration for

---

[1] Idea Nuova is a New York corporation with its principal place of business in New York, New York. (Compl. at ¶ 1.) GM is a California corporation with its principal place of business in the State of California. (Petition to Confirm Arbitration Awards ("Pet."), at  1.)  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

> resolution. In such arbitration, the discovery rules of the
> California Code of Civil Procedure shall apply. If either
> party succeeds in any legal or other proceeding in
> connection with the other party's violation of this
> agreement or other improper act or omission, the prevailing
> party will be entitled to receive from the losing party
> reimbursement for the prevailing party's reasonable
> attorneys' fees and costs and other expenses of such
> proceedings.

(Agreement at 3.)

The Agreement did not include a choice of law provision other than its specification that arbitration-related discovery would be governed by the California Code of Civil Procedure.

Beginning in late 2005 and early 2006, GM and Idea Nuova exchanged several proposals regarding the renewal and possible modification of the Agreement. According to Idea Nuova, these efforts proved unsuccessful and the parties failed to renew the Agreement past December 31, 2005. GM maintains that the parties orally agreed to a three-year extension of the Agreement during their negotiations. On or about November 27, 2006, GM demanded arbitration pursuant to the Agreement's arbitration clause and sought a determination that: (i) the Agreement had been renewed for a three-year period, from January 1, 2006 through December 31, 2008, during oral negotiations that occurred in May 2006; and (ii) Idea Nuova owed GM certain commissions under the renewed Agreement. See Interim Arbitration Award ("Interim Award"), at 4.

Hearings were held before the arbitrator on November 19 and 20, 2007 ("Hearing One"), and the first of three interim awards was issued on December 20, 2007. In that award, the arbitrator found that "the parties did intend that renewals of the Agreement would be reflected in a signed, written agreement." (Id. at 7.) But the

3

arbitrator also concluded that both California contract law and principles of equitable estoppel supported enforcement of an oral agreement to renew, even without subsequent reduction of that agreement to writing, where both parties intended their oral agreement to be binding.  (Id. at 8.)  Applying these standards to the evidence, the arbitrator found that "the parties renewed the Agreement for the period extending from January 1, 2006 through December 1, 2008. . . ." (Id. at 11.) [2]

In March 2008, Idea Nuova moved to terminate the arbitration, arguing that, by reason of the Agreement's "cooling-off period" clause, the parties had resolved all of the issues then eligible for arbitration.  (Interim Award No. 2 (As Modified), at 2.) According to Idea Nuova, the arbitration of additional issues, including which, if any, of its outstanding license agreements triggered post-demand commissions to GM under the Agreement, would violate the Agreement's express requirement that the parties attempt to resolve their claims for forty-five days prior to seeking arbitral relief.  (Id.)  GM opposed Idea Nuova's motion to terminate and moved for leave to file an Amended Demand for Arbitration.  (Id.)  The arbitrator heard oral argument of both motions and granted GM leave to amend on March 17, 2008.  (Id.)  Hearings continued in April, May and June of 2008, and the arbitrator issued his Second Interim Award on August 18, 2008.  The Second Interim Award formally granted GM's motion to file a supplemental and amended Demand for Arbitration, denied Idea Nuova's March 2008 motion to terminate the arbitration, and identified specific license and special sales agreements under which GM was entitled to commissions.  (Id. 18-19.)  The Second Interim Award expressly included "license agreements entered into by [Idea Nuova] after September

---

[2] The arbitrator later corrected this initial finding to state that the renewed Agreement extended through December 31, 2008 and not December 1, 2008.  See Interim Award No. 2 (As Modified), at 1 n.1.

2006 with licensors to which GM had rendered consulting services in or before September 2006" in its definition of the "Covered Agreements" that entitled GM to related sales commissions. (Id. at 16-17.)

The arbitration hearings continued on September 16 and 17, 2008.  The arbitrator issued his Third Interim Award on November 24, 2008, finding that Idea Nuova had conceded its breach of the Agreement and calculating specific dollar amounts due to GM as a result of that breach. (Interim Award No. 3, at 19-20.) The Third Interim Award granted compensatory damages to GM and also awarded injunctive relief and reimbursement of the costs incurred by GM in connection with the arbitration. (Id. at 20-23.) [3]

The arbitrator issued his Final Arbitration Award on January 21, 2009, reaffirming all three interim awards in their entirety and specifying a fee award of $323,175.53.  (Award at 1-3.)

II.    Subsequent procedural history

Idea Nuova commenced this action on October 8, 2008 and filed an amended complaint on November 25, 2008.  (Dkt. Nos. 1, 6.)  At an initial pre-trial conference on December 5, 2008, the Court granted Idea Nuova permission to further amend its complaint within 20 days of the arbitrator's final award.  (Dkt. No. 8)  Idea Nuova filed its Second Amended Complaint on January 23, 2009.  (Dkt. No. 9.)

---

[3] The Third Interim Award's injunction provision required Idea Nuova to:  (i) timely deliver copies of all Covered Agreements to GM; (ii) render full and accurate accountings to GM, as required under paragraph three of the Agreement; (iii) timely deliver any supporting royalty reports relevant to such accountings; (iv) timely deliver copies of any supporting purchase orders and invoices pertaining to Special Sales; (v) timely pay all commissions due under its accountings; and (vi) pay additional interest payments of one and a half percent (1.5%) on all late commission payments to GM.  (Interim Award No. 3, at 21-22.)

On February 24, 2009, GM petitioned for confirmation of the Award and an award of its reasonable costs and attorney's fees.  (Dkt. No. 14.)   Idea Nuova responded to GM's petition on March 24, 2009 by moving for summary judgment or, in the alternative, for vacatur or modification the Award under sections 10 and 11 of the FAA. (Dkt. No. 23.)

III.    Confirmation and vacatur under the FAA

"Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), and 9 U.S.C. § 9).  The FAA permits vacatur of an arbitral award:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 90-91 (2d Cir. 2008), cert. granted, 129 S.Ct. 2793 (June 15, 2009) (No. 08-1198) (citing 9 U.S.C. § 10(a)).[4]

District courts may also vacate an arbitral award where the award exhibits "manifest disregard" for the law, but review under this doctrine is "severely limited" and permits vacatur "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Id. at 91-92 (citations omitted). The "manifest disregard" standard requires that an arbitrator be "fully aware of the existence of a clearly defined governing legal principle, but refuse[ ] to apply it, in effect, ignoring it." Id. at 96 (alteration in original; citation omitted). Since the Supreme Court's decision in Hall Street Assocs., L.L.C. v. Mattel, Inc., __ U.S. __, 128 S.Ct. 1396 (2008), the Second Circuit has emphasized that the "manifest disregard" doctrine survives primarily as "a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA." Id. at 94.

The party moving to vacate an arbitration award bears the burden of proof and "the showing required to avoid confirmation is very high." D.H. Blair, 462 F.3d at 110 (citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)). "[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008) (citations omitted).

IV.     Idea Nuova's cross-motion to vacate or modify

Idea Nuova argues that the arbitrator exceeded his authority in three ways: by manifestly disregarding governing law, by reviewing claims that were ineligible for

---

[4]  Section 11 of the FAA lists various circumstances in which an award may be modified or corrected, including "where the arbitrators have awarded upon a matter not submitted to them." 9 U.S.C. § 11. Idea Nuova does not cite any specific provisions from this section to support its motion.

7

arbitration under the Agreement's "cooling-off period" clause, and by awarding excessive attorney's fees to GM. The Court addresses each of these arguments in turn.

        A.    Manifest disregard of the law

"A federal court cannot vacate an arbitral award merely because it is convinced that the [arbitrator] made the wrong call on the law." Stolt-Nielsen, 548 F.3d at 92 (quoting Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004)). The "manifest disregard" standard requires that courts vacate arbitration awards only in those "rare instances in which the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" Id. at 95 (quoting Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 217 (2d Cir. 2002)) (alteration in original).

There are three components to a court's application of the "manifest disregard" standard. First, the court must "consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators." Id. at 93. Second, the court must find that this "clear and plainly applicable" law "was in fact improperly applied, leading to an erroneous outcome." Id. Once the first two inquiries are satisfied, the court looks to "a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him. In determining an arbitrator's awareness of the law," the court imputes "only knowledge of governing law identified by the parties to the arbitration." Id. In other words, "[a]n arbitrator (even an arbitrator who is a lawyer) . . . is ordinarily assumed to

be a blank slate unless educated in the law by the parties." Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002).

      Idea Nuova cites four examples of manifest disregard for the law in its motion. See Mem. of Law in Support of Plaintiff's Motion for Summary Judgment, or in the Alternative to Vacate or Modify the Arbitration Awards ("Idea Nuova Br."), at 19-24. First, Idea Nuova argues that two of the arbitrator's findings—the recognition and enforcement of an oral renewal under California law, and the conclusion that principles of estoppel support enforcement of such a renewal—conflicted with the New York standards that "must apply" to the instant dispute. (Idea Nuova Br. at 13.) But Idea Nuova does not identify the relevant conflict between New York and California law, and it does not indicate that it raised a choice of law objection to the arbitrator.[5] Nor does Idea Nuova identify any provision in the Agreement that indicates consent by the parties to apply New York law in their arbitral disputes.[6] Without these showings, Idea Nuova cannot demonstrate that the arbitrator knew that New York law conflicted with California law and that New York law was applicable to GM's renewal claim rather than California law. See Stolt-Nielsen, 548 F.3d at 93. Idea Nuova has not, therefore, demonstrated that the arbitrator's analysis of renewal under California law "willfully flouted the governing law by refusing to apply it." Id. at 95.

      Idea Nuova's third and fourth examples of "manifest disregard" are equally insufficient to demonstrate "egregious impropriety" in the arbitration. Idea

---

[5] Preservation of the choice of law issue was raised with Idea Nuova's counsel during the December 5, 2008 initial pre-trial conference. Idea Nuova has not addressed the import of an apparent failure to raise the issue before the arbitrator.

[6] Idea Nuova concedes in its Second Amended Complaint that the Agreement is "silent" on the choice of law issue. (Compl. ¶ 51.)

Nuova asserts in conclusory fashion that "[t]he [a]rbitrator manifestly disregarded the law since he held that the Agreement was renewed but that GM was completely excused from all contractual obligations." According to Idea Nuova, this finding defied "the fundamental rule of 'mutuality of obligations'" and amounted to "the [a]rbitrator's 'own brand of justice.'" (Idea Nuova Br. at 22.) But Idea Nuova's argument mischaracterizes the arbitrator's finding. The arbitrator concluded only that, because Idea Nuova "terminated GM's consulting services in or around September 2006 and did not allow GM to render consulting services for [Idea Nuova] after that time," GM was "excused from any obligation to render consulting services for [Idea Nuova] from and after September 2006." (Interim Award No. 2 (As Modified), at 16.) This finding does not conflict with the arbitrator's simultaneous finding of renewal in May 2006, and it is not inconsistent with the Agreement's own terms, which contemplated continued commission payments even after termination of GM's consulting services. See Agreement at 1 ("Consulting Services").

Idea Nuova also argues that the arbitrator "manifestly disregarded the law because he awarded clearly excessive attorney fees for duplicative and/or clearly unnecessary legal work." (Idea Nuova Br. at 22.) Idea Nuova does not, however, appear to contend that the arbitrator ignored or deliberately rejected reasonableness requirements in reaching the fee award. Instead, Idea Nuova appears to challenge the application of those requirements by repeating its objections and then concluding that "the [a]rbitrator did not appear to even consider any of these issues." (Id. at 24.) "Based on [the] improper uses of attorney resources," Idea Nuova argues, "GM's fee award should have been reduced to some extent." (Id. (emphasis in original).) Apart from this general

criticism, Idea Nuova does not articulate a specific objection to the arbitrator's legal analysis and does not explain how that analysis amounted to a deliberate disregard for governing legal standards. The Court has no basis to conclude that the arbitrator's fee award exhibits manifest disregard for the law. The Court also notes that an arbitrator's calculation of a reasonable award necessarily involves findings of fact, "which federal courts may not review even for manifest disregard." Stolt-Nielsen, 548 F.3d at 98 (citation omitted).

      B.    Arbitrability

Idea Nuova's remaining arguments under section 10 assert that the arbitrator improperly reached issues outside the scope of the Agreement's arbitration clause. The Court's inquiry under this aspect of section 10(a)(4) focuses on "whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue." Stolt-Nielsen, 548 F.3d at 101 (citations omitted; emphasis added). Although Idea Nuova argues that the arbitrator exceeded his authority "by allowing GM to amend its Demand to include a host of additional issues that did not satisfy the required 45-day cooling-off clause" and by awarding attorney's fees for Hearing One (Idea Nuova Br. at 17), the Court concludes that Idea Nuova's arguments do not support vacatur in this case.

      1.  The Amended Demand

According to Idea Nuova, GM improperly added three new issues to the arbitration through its Amended Demand: "(i) damages for non-payment of commissions that allegedly accrued after GM demanded arbitration (i.e. 2006 going forward); (ii) injunctive relief to remedy [Idea Nuova]'s alleged failure to provide certain reports; and

(iii) attorney fees regarding these additional issues." (Idea Nuova Br. at 17.) Idea Nuova objects to these changes because: "[i]t was of course not possible for [GM] to have satisfied the 45 day requirement for its new claims as defined in its Amended Demand since it alleges that the only good faith attempts took place in 2006 and there was less than 45 days left in 2006 following the November 27 Demand." (Idea Nuova Reply Br. at 5 n.1.)

As an initial matter, Idea Nuova has misrepresented the text of GM's Amended Demand, which stated that GM "made repeated good faith attempts throughout 2006 to resolve the dispute(s) embodied in [its] Demand for Arbitration, and more than forty-five (45) days have passed since [GM] did so." (Amended Demand for Arbitration, at 5) (emphasis added).

Idea Nuova also appears to have overstated the substance of GM's amendment. The arbitrator's August 2008 finding on damages for non-payment of commissions that accrued after November 2006, for example, fell within a general review of which license or sales agreements between Idea Nuova and its licensors qualified as "Covered Agreements" under the renewed Agreement. See Interim Award No. 2 (As Modified), at 16-17. [7]  This finding may fairly be characterized as an interpretation and

---

[7] The Second Interim Award states as follows:

Based upon the evidence introduced at Hearings One and Two, the arbitrator finds and declares:

(a) The term "Covered Agreement" in paragraph 1 of the Agreement means and includes all license agreements and special sales agreements (as that term is defined in paragraph 1 of the agreement) entered into between [Idea Nuova] and licensors during the term of the agreement or within 12 months after expiration of the term, as to which licensors GM rendered consulting services for [Idea Nuova].

(b)  . . . The term Covered Agreement includes license agreements entered into by [Idea Nuova] after September 2006 with licensors as to which GM has rendered consulting services in or before September 2006.

application of the Agreement's terms, and does not amount to an impermissible expansion of the original renewal review. In fact, the arbitrator appears to have highlighted this element of the parties' dispute in his first, December 2007 award. See Interim Award at 4 ("The parties stipulated that an initial hearing ("Hearing One") would be held, limited to the issues of the existence, nature and term of the agreement between the parties, after which an Interim Award would be rendered on those issues. Additional issues, such as which license agreements were covered by the Agreement and what monies, if any, were owed under the Agreement, were reserved for a later hearing.").

The arbitrator's injunction required Idea Nuova to abide by the provisions of the Agreement, with its term extended through December 2008, by delivering certain commission payments and supporting documentation. This appears consistent with the scope of the parties' original dispute. Idea Nuova's post-November 2006 obligations—like its pre-November 2006 obligations—arose out of the same Agreement.

Idea Nuova does not cite any material from the arbitral record, or from its own submission to the arbitrator in March 2008, to support or explain its contention that the 2008 amendments were improper. Without such support, this Court has no basis to conclude that the amendments cited expanded the scope of the parties' arbitration or circumvented the Agreement's 45-day "cooling-off" provision.

### 2. Attorney's fees

Idea Nuova also contends that the arbitrator "was not permitted to award attorney fees for Hearing One." (Idea Nuova Br. at 17.) According to Idea Nuova, "until the [a]rbitrator held that the parties renewed the Agreement by implication, there simply was no Agreement to violate. As such, it was entirely beyond the scope of the

(Interim Award No. 2 (As Modified), at 16-17.)

13

[a]rbitrator's power to award attorney fees pertaining to Hearing One, which was the only hearing that contained arbitrable issues."  This argument seems to assume that the Agreement terminated prior to being revived by the arbitrator's finding and that, in the interim, Idea Nuova could not have violated the Agreement's fee award clause.  But the arbitrator concluded, based upon the evidence before him, that the parties had renewed the Agreement orally in May 2006.  Inherent in this finding is a conclusion that the Agreement's arbitration clause, including its fee provision, also continued in force, uninterrupted, through the renewal period.  An award under the attorney's fee provision would not, therefore, be improper.

V.    De novo review

Idea Nuova suggests in its Memorandum of Law that, as an alternative to vacatur or modification under the "restrictions contained in §§ 10 and 11 of the [FAA]," this Court may reject the Award outright and review the parties' dispute de novo.  (Idea Nuova Br. at 11-12.)   According to Idea Nuova, the absence of language in the Agreement stating that the parties' arbitration would be "final and binding" permits this Court to consider and resolve the underlying dispute independently.  (Id. at 11.)  Idea Nuova adds that, because "there is no provision [in the Agreement] for the AAA Rules to govern . . . the Awards—at most—are merely advisory, and are given whatever 'persuasive weight as the court concludes it deserves.'"  (Id. at 12.)  Idea Nuova asks the Court to apply its review power to grant Idea Nuova "summary judgment on the merits."  (Id.)

The Second Circuit has explained that "a clause [in an arbitration agreement] providing for the settlement of controversies by arbitration pursuant to the

rules of the American Arbitration Association [('AAA')]" is 'sufficient to incorporate th[ose] rules into the agreement.'" <u>St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp.</u>, 111 F.3d 124, 1997 WL 187332, at *1 (2d Cir. 1997) (unpublished opinion) (citing <u>Varley v. Tarrytown Assocs., Inc.</u>, 477 F.2d 208, 210 (2d Cir. 1973)) (alterations in original). "Therefore, by virtue of Rules 1 and 47(c) [of the AAA Rules], if parties to a contract agree to conduct arbitration in accordance with or pursuant to the AAA Rules, they have satisfied the 'consent-to-confirmation' requirement of section 9 of the FAA." <u>Id.</u> (citing <u>I/S Stavborg v. National Metal Converters, Inc.</u>, 500 F.2d 424, 426 (2d Cir. 1974)).

Idea Nuova has not identified any binding authority to support its contention that the parties' selection of AAA arbitration was insufficient to ensure limited judicial review under the FAA.[8] Idea Nuova quotes an Eighth Circuit case as holding that this Court may give the Award "whatever 'persuasive weight as the court concludes it deserves,'" but the same case also states that parties who intend binding arbitration may demonstrate their intent "either by providing that the arbitration award will be 'final and binding,' or words to that effect, or by incorporating by reference the rules of the American Arbitration Association or a similar arbitral body that expressly provide for

---

[8]  Idea Nuova cites one Second Circuit case as establishing that "[w]here the arbitration is not final and binding, Federal courts have subject matter jurisdiction to decide the underlying dispute." (Idea Nuova Br. at 11 (citing <u>Aeronautical Indus. Dist. Lodge 91 of the Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. United Technologies Corp.</u>, 230 F.3d 569, 575 (2d Cir. 2000).) The language cited, however, relates exclusively to the review of a presumption, under section 301 of the Labor Management Relations Act, favoring access to a judicial forum to resolve disputes involving the application and interpretation of collective bargaining agreements. <u>See</u> 230 F.3d at 575. Specifically, the Second Circuit states that: "a district court has jurisdiction to review an arbitration award where the [collective bargaining agreement] does not expressly provide that the arbitration is 'final and binding' or the equivalent, but lacks jurisdiction where the [collective bargaining agreement] so states." <u>Id.</u> (citations omitted).  This Court does not read <u>Aeronautical Industrial</u> as overruling or abrogating the Second Circuit's well-established deference to arbitral awards issued under the FAA. <u>See</u> <u>Stolt-Nielsen</u>, 548 F.3d at 95.

binding arbitration." Dow Corning Corp. v. Safety Nat'l Cas. Corp., 335 F.3d 742, 745 (8th Cir. 2003).

VI.    Conclusion

For the reasons outlined above, GM's petition for confirmation of the Award is granted. Idea Nuova's motion for summary judgment or, in the alternative, for vacatur or modification of the Award, is denied. Because the Court concludes that Idea Nuova has failed to identify any ground for vacatur or modification under the FAA, Idea Nuova's claims for such relief in the Second Amended Complaint are also dismissed.

As the prevailing party in this dispute, GM is entitled to an award of the reasonable costs, attorney's fees and other expenses that it has incurred in connection with this action. (Agreement at 3.) The parties are directed to meet and confer regarding the amount of that award. Failing agreement with Idea Nuova, GM is directed to submit a specific award request, with supporting documentation, to the Court for review within 20 days of the date of this Order.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 19, 2009

16